ELIAS BRIDGES et al., Ex'rs, &c., *v.* JAMES A. MAXWELL, Judge, &c., to use, &c.

1. EXECUTOR AND ADMINISTRATOR: RIGHT TO SUE FOR REMOVAL OF PROPERTY BELONGS TO HEIRS ONLY.—The statute (Hutch. Dig. 665, § 93) which provides for an action on the bond of an executor or administrator, for a removal out of the State of property belonging to the testator or intestate, secures this remedy to the "heirs" only; it is not necessary or proper, therefore, that the widow should be joined as one of the usees in the action. Fisher, J., dissented.

2. SAME: THE HEIRS' RIGHT TO SUE UNDER ACT OF 1821 (Hutch. Dig. 665, § 93), NOT DEFEATED BY APPROPRIATION OF THE PROPERTY TO THE PAYMENT OF DEBTS.—The ninety-third section of the Act of 1821 (Hutch. Dig. 665), which enacts that no executor or administrator shall, on any pretence whatever, remove any property belonging to his testator or intestate beyond the limits of this State, and that in case of any such removal, that the judge of the Court of Probates having jurisdiction of the estate, shall forthwith institute suit, "for the use of the heirs," on the bond of such executor or administrator, and "the jury trying the cause, on satisfactory evidence of the removal as aforesaid, shall render a verdict against the defendant or defendants for the full value thereof, and such other damages as the parties interested may have sustained," —declares a rule of public policy for the purpose of securing to the courts of this State, to which the administration of estates of deceased persons has been committed, the full exercise of their jurisdiction for the benefit of those interested, and it gives this action as a specific right to the heirs, not by way of compensation for the actual damage sustained, but as a punishment on the administrator or executor for a gross violation of his duty and of law; and hence, in such a case, the heirs are entitled to recover the full value of the property removed, although the executor or administrator may have sold it and applied the value to the payment of the debts of the testator or intestate. Fisher, J., dissented.

ERROR to the Circuit Court of Claiborne county. Hon. Stanhope Posey, judge.

*John B. Coleman,* for plaintiffs in error.

*W. S. Wilson* and *George V. Moody,* for defendant in error.

HANDY, J., delivered the opinion of the court.

This action was brought in the name of the judge of probate, for the use of certain named persons, as heirs of Duncan H. McIntyre, deceased, to recover upon the administration bond executed by Thomas G. McIntyre, Adeline C. McIntyre, and Peter McIntyre, administrators of his estate. The action was brought against the plaintiffs in error, as executors of one of the sureties to that bond, to recover the value of certain slaves and other property of the estate alleged to have been removed by the administrators out of the limits of this State, contrary to law.

The defendants below answered, and set up the following grounds of defence: 1st. That Adeline C. McIntyre, the widow of Duncan, and then living in the county where the action was brought, was equally interested in the subject-matter of the suit with the relators, and should have joined with them in the action; and relying on the non-joinder as if it had been pleaded. 2d. Denying that all of the slaves and other property set out in the declaration were removed as therein alleged. 3d. Denying that the property was of the value charged. 4th. Alleging that $18,050 was the full value of the property removed, and that it was sold for that sum, and that the administrators of Duncan H. McIntyre charged themselves with that sum in their annual account with the Probate Court, at April term, 1846, which was allowed by that court at January term, 1847, whereby that sum was appropriated to the benefit of the relators, by paying therewith debts of the estate of McIntyre, and this is set up as a payment to the relators of the full value of all the property removed. To all of this the plaintiff demurred, except that denying the value of the property removed as alleged in the declaration; and upon that the plaintiff took issue.

The questions presented by this demurrer are the first subjects to be considered.

First. It is insisted that the non-joinder of Mrs. McIntyre, the widow of the intestate, was a fatal defect in the declaration or complaint; that the statute under which the action was brought,

intended that but one action should be brought by all the parties united claiming under it, and not by a part of them for their proportions; and that the widow, being a party entitled to a share of the estate, was a party interested in the subject-matter of the suit; and that, although the statute confers the right of action in such a case upon the "heirs," yet it intended to embrace all those who were entitled to portions of the estate. But we do not consider this construction authorized by the words of the statute. The remedy is specially given to the "heirs of the testator or intestate." The widow could not with any propriety be said to be included in the term "heirs," a well-defined legal class of persons; and the legislature must be presumed to have used the term in its received import. The power to give the remedy to any class of persons connected with the estate resided in the legislature. It was matter of discretion upon whom it should be conferred. It could not be given to the representatives of the personal estate, for they were the very persons against whom it was to be exercised. It was not given to the distributees as such, but it was deemed proper to give it to the persons who were heirs, not that that term was applicable to those interested in the personal estate, but that this right growing out of the personalty, should be conferred upon those who were the legal heirs of the deceased. What induced the legislature to give the remedy to this particular class of persons, it is not important to inquire, inasmuch as those to whom it is given are designated in plain legal terms. But it is plain that there are no equitable considerations which should have caused the legislature to extend it to her. For her legal rights in the estate, apart from this provision, are not interfered with, and she has no right to complain, that the legislature did not think fit to include her in a special remedy provided as a means of enforcing a rule of high public policy. It is, however, not improbable that the benefit of the statute was not extended to her, for the reason that her right to take the administration having precedence of others, her position as administratrix would give her the power to violate the law; and considering the probability of widows taking administration of their deceased husbands' estates, it was not deemed proper to embrace her within the provisions of the statute. But whatever may have been the reason,

it is clear that she cannot be included in the words, without doing violence to their plain legal import.

Second. The denial of the answer, that all the property set out in the declaration was removed, &c., is clearly not a sufficient answer to the allegation in the declaration. It was not necessary, to maintain the action, that *all* the property should have been removed; for the defendants were liable for the removal of a part of it, and the plaintiff entitled to recover accordingly. Yet, if issue had been taken upon this ground of defence, the plaintiff would have failed, though he had proved that every article of property had been removed but one. It was, therefore, not an answer to the whole declaration, and, though it were true, the plaintiff might have been entitled to recover.

Third. The question presented by the next ground of defence is, whether the action could be maintained, if the administrators removed the property of the estate out of this State, and sold it for its full value, and afterwards accounted with the Probate Court for the same, and applied it to the payment of the debts of the intestate? This is relied on as a discharge of the plaintiff's demand; and the question is, whether it can have such an effect under a just construction of the statute? or, in other words, whether, if the administrators removed the property out of the State and sold it, and afterwards accounted for its value to the Probate Court, by applying its proceeds in the same manner in which they would have been appropriated if the property had been sold here under the order of that court, the heirs could maintain this action under the statute?

The provisions of the statute under consideration are, first, a very emphatic prohibition against any executor, administrator, &c., under any pretence whatsoever, from removing any property whatsoever belonging to the estate with which he is charged. A rule of public policy is thus declared, for the manifest purpose of securing to the courts of our own State, to whom the administration of deceased persons' estates is committed, the full exercise of their jurisdiction, to prevent frauds upon that jurisdiction, and to insure to those interested in the estate the full benefit of it. Then immediately follows the section for a violation of the rule, which is, that, in case of any such removal by an executor, &c., it shall be the

duty of the judge of probate having jurisdiction of the estate, to institute suit forthwith, "for the use of the heirs of the testator or intestate," upon the bond of the executor, &c.; "and the jury trying such cause shall, on satisfactory evidence of the removal of the property as aforesaid, render a verdict against the defendant or defendants, for the full value thereof, and such other damages as the parties interested may have sustained." Hutch. Dig. 665, § 93.

It is admitted, on the part of the plaintiffs in error, and it is evident, that this is a penal statute. And it is manifest that it was intended to give to the heirs of the deceased a specific right against an administrator, who had removed property belonging to the estate out of this State, as a punishment against him for the commission of an act, denounced by the statute, in gross violation of his duty, in contempt of law, and dangerous to the rights of those entitled to the benefit of the property. This policy does not look to the *actual* damage occasioned to the parties interested in the estate, nor does it proceed upon the principle of allowing compensation for the injury those parties may sustain in consequence of the illegal removal of the property from this State. On the contrary, in order to prevent the violation of the law, it gives to the heirs the specific right to recover, at least, "the full value of the property" at all events, and regardless of whether any damage was occasioned to the parties interested in the estate or not by the prohibited act; and, in addition to that, the right to recover such other actual damages as the parties interested may have sustained in consequence of it. The reason of the policy, then, is not compensation for the injury to the parties interested, but punishment to the parties violating the law. Hence, the principle relied on in the defence cannot be recognized as a sound one, that the relators of the plaintiff have suffered no injury by the removal, because the property has been applied substantially in the same way that it would have gone had it not been removed; and, as they would have received no benefit of it, had it not been removed, but been administered here, they have sustained no injury by the removal.

The statute makes it the duty of the judge of probate forthwith, after the removal, to institute the suit for the use of the heirs; and it *fixes* the *minimum* amount of recovery, as a positive and specific right, arising upon the violation of law. That right is independent

of the matter of administration in the Probate Court, and cannot be defeated or impaired by any act which that court may do in the exercise of its appropriate functions of administration, because it is a matter wholly beyond the control of that court.

If this were not true, an action properly commenced for a violation of the statute, might be wholly defeated as to the recovery of any damages, by a subsequent accounting of the administrator with the Probate Court, showing that he had substantially applied the property to the payment of debts of the deceased which were sufficient to exhaust it, and therefore that the distributees had sustained no injury. But it is manifest that this view is neither sustained by the letter nor the spirit of the statute. For, according to this construction, no further right is conferred by the statute than what existed without it, except the mere right to bring the action "forthwith" upon the removal, subject to be rendered fruitless or entirely defeated by the accounting of the administrator, showing that the property had really been applied to the payment of the debts of the deceased. With the exception of this mere formal and problematical right, the statute, according to the construction contended for, adds nothing to the remedies already existing against the administrator; it places him merely in the condition of an executor *de son tort,* who may show an application of assets to the payment of debts, or it operates as a mere stimulus to cause him to account for his disposition of the property. But the statute most obviously intended to confer a right in addition to that of immediate suit, and superadded to those already existing against the administrator, a substantive and fixed right, apart from any matter of his administration of the estate, and with which the Probate Court could not interfere, either directly, or by means of its action upon his accounts,—a penalty for the violation of law, to accrue to the heirs of the intestate, at all events, to the amount of the full value of the property removed. The right conferred by the statute is plain, and the reason appears to be evident; and it is not for us to say that its provisions may not be enforced because its effect is inequitable in giving a right to parties to recover when they have sustained no injury. We have no power to introduce modifications to the plain provisions of a statute on the ground that the right conferred is contrary to justice.

We, therefore, think there was no error in sustaining the demurrer, and for the same reasons, that there was no error in excluding from the jury the evidence offered by the defendants to show that the administrators in their account with the Probate Court had accounted for the proceeds of the sale of the property, and applied it to the payment of the debts of the estate.

The next error insisted upon is, that the plaintiff failed to read in evidence to the jury, the administration bond sued upon.

That was unnecessary. The matters of defence set up in the answer were in the nature of pleas of confession and avoidance, which virtually admitted the execution of the bond, but denied that there was any breach of its condition, or that the plaintiff's relators were entitled to recover, by reason of the matters of defence set up. Under the general rules of pleading, it was therefore unnecessary to offer the bond in evidence. But the tenth section of the Statute of 1850, in relation to pleadings,—the bond not being denied by the answer,—must be taken as admitted.

Again, it is urged in support of the motion, that the damages assessed by the jury were excessive. The verdict was for the plaintiff for $25,797, with the statement that the jury deducted one-fifth of the value of the property for the share of the widow,— from which it appears that the jury estimated the property at about the value of $30,956. This appears to be sustained by the evidence, taking into consideration the number of the slaves, which were upwards of fifty, and their value at the time of the removal, as shown by the testimony.

It remains only to consider whether the court erred in refusing to allow the defendants, after the demurrer was sustained, to file a plea in abatement, setting up the non-joinder of Adeline C. McIntyre, as one of the relators in the action. Under the view we have taken of her right to become a party to the suit, the refusal of the court to permit the plea to be filed could work no injury to her, even if it was proper to offer such a plea, after an answer amounting to a plea in bar had been filed. Had it been permitted to be filed it would have been unavailing, and the rejection of it was not an error to her prejudice.

Upon consideration of the whole case, we are of opinion that the judgment is correct; and it must be affirmed.

SMITH, C. J., said: I concur in the judgment of affirmance.

FISHER, J., delivered the following dissenting opinion.

This was an action of debt, brought in the name of the judge of the Probate Court of Claiborne county, for the use of the distributees of the estate of Duncan McIntyre, deceased, upon the bond executed by the administrators of said estate.

The suit was brought against the plaintiffs in error alone, as executors of the last will and testament of William Bridges, deceased, who was a security upon said bond. The breach assigned is, that the administrators removed the property of the estate into the State of Louisiana. The action was brought under the ninety-third section of the Act of the 26th of November, 1821 (Hutch. Code, 665), which declares that no administrator shall, under any pretence whatsoever, remove any property wherewith he is charged, beyond the limits of this State; and in case he shall do so, it is declared to be the duty of the judge of probate to institute suit forthwith in his name, for the use of the heirs of the intestate, in any court having jurisdiction of the case, against such administrator and his sureties on his bond; and that the jury trying the issue shall, on satisfactory evidence of the removal of the property, render a verdict against the defendant for the full value thereof, and such other damages as the parties interested may have sustained.

The defendants demurred generally and specially to the declaration, and the court below sustained the demurrer; but, for some cause not shown by the record, the defendants subsequently pleaded to the merits, and the plaintiff, with one exception, demurred to these several pleas, or, as they are called, grounds of defence, and the court below sustained the demurrer.

The first question claiming consideration is, the attitude of the case as left by the decision of the court on the demurrer to the declaration, and the action of the court on the demurrer to the pleas; and this brings up for consideration the question, whether, under the averments of the declaration, a separate action could be maintained on the bond against the sureties of the administrators, when there was no averment of a recovery against them, on account of the alleged breach of the condition, or failure by them to pay such recovery. It may be safely admitted, that under the special provision of the statute, a joint action could be maintained against both

the principal and sureties in the bond; but if such action is not brought, or cannot be maintained, a separate action against the security can only be maintained in those cases where it appears that the liability of the principal has been fixed, and the action is brought to enforce such liability. This was unquestionably the law of this State, until modified by the Act of 1830. Hutch. Code, 676. Prior to that act, a separate suit was necessary against an administrator to establish a *devastavit*, before an action could be maintained on the bond against the surety; and the Act of 1830 merely dispensed with the separate proceeding against the administrator, in those cases where a joint action could be maintained, or was in the first instance prosecuted on the bond. The Act of 1821, under which this proceeding was commenced, must be construed with reference to the laws then in force prescribing the duties and regulating proceedings against administrators; and admitting that it authorizes a joint action against both principals and sureties on the bond, it does not, either in terms or by fair construction, authorize an action against sureties alone, when the liability of the principals has not been fixed, as required by the laws then in operation. The plain meaning of the law is this, that a party injured may bring his action jointly against the administrator and his sureties, and in such action fix the liability of the administrator, and recover accordingly against all the obligors in the bond; but if he elect not to proceed in this manner, or show that he cannot so proceed, he must aver a recovery in a proceeding directly against the administrator, and a failure by him to pay the sum recovered, when he undertakes to charge the surety; and these averments not appearing in the declaration, it is clearly bad on general demurrer, for the reason, that without such averments there is simply no cause of action shown against the surety.

The rule rests upon a familiar principle, that the surety in this class of cases can only be held liable in those cases where the liability of the principal has been fixed in a direct proceeding against him. The surety does not covenant that the administrator will perform his duty according to law, but only that he will be responsible for such damages as may be recovered against the administrator in consequence of any mal-administration. This being the nature of the surety's undertaking, it follows that a recovery

against the administrator must either precede or be simultaneous with the recovery against the surety.

It is next said that the widow, being interested in the estate removed, should have been joined with the other relators in the prosecution of the suit. The statute declares that the suit shall be brought for the use of the heirs of the intestate. The technical meaning of this.term "*heirs*" is well understood by the profession, but it is manifest that the statute intended to embrace all persons equally interested in the estate removed. Where there is a system of laws upon a particular subject, it is not always a safe rule for a court to confine its investigation to a single provision of a law. The question is, what was meant by the word *heir?* Distributees are not, in a technical sense, if we look to the common law for the definition, *heirs;* nor is the widow of the intestate. But, discarding the common law definitions, how are these parties regarded by our system of laws, if the expression can be allowed, on this subject?

There can be but one answer, and that is, after certain specific claims of the widow are satisfied, she and the heirs,—for such is the language of the statute,—are equally interested in the estate; and if interests are equal, upon what principle is it that the injury, occasioned by the removal of the property, is not also equal? Suppose the intestate should leave no children, when the widow would be entitled to one-half of his estate, and the administrator should remove the property beyond the limits of this State, under the rule contended for, she would have no remedy for this violation of duty and of law, upon the bond. The remedy, if the rule be correct, would belong alone to the next of kin, who might sue and recover the value of the whole property,—the widow's portion and all; exhaust the whole penalty of the bond, and leave the widow without any security whatever, for the protection of her rights, when she was the party specially favored under the law, regulating the rights of the parties interested in the estate. In such case, the parties having inferior rights would avail themselves of the widow's superior right for the purpose of her destruction. The greater her interest involved, the greater would be the dangers threatening it. As her rights multiplied, and dangers threatening their destruction increased, the law in the same ratio would withhold its protection. It would be in effect declaring, that what was once a great wrong

upon her, had been, by the act of removal of the property, converted into a vested right in the husband's next of kin; and that she must abide her ·time, until a final settlement of the estate by the administrator; and then, if a small portion of the penalty of the bond should remain, she could, jointly with the other distributees (who had already recovered her portion), prosecute an action on the bond; and if the parties thereto had not already been rendered insolvent, by the first recovery, she might collect her portion decreed by the court.

It is, however, said that the widow was the administratrix of the estate, and could not, therefore, be joined as a beneficiary in the suit. I admit that this was a good reason for not joining her; but the declaration should have so averred. I deny, however, that the other distributees can recover her portion of the estate.

Under the particular circumstances of this case, I am willing to admit that the widow was not a necessary party as a beneficiary; but what I object to, is the construction given to the statute,—holding that she is not one of the parties provided for, and that she cannot prosecute an action for the removal of property, in which she is as much, and often more, interested than those who are denominated heirs.

Passing over all other minor points, I will proceed to the consideration of one other point, which involves the whole merits of the controversy. The defendants below offered to read in evidence a record of the Probate Court of Claiborne county, showing, among other things, that the administrator had paid debts against the estate, amounting in the aggregate to the sum of $32,922 50. It appears, by the bill of exceptions, that this account had been regularly examined, allowed, and ordered to be recorded, at the January term, 1847, of said court. No objection appears to have been made to the account on the ground that it had not been regularly allowed by the proper court. This evidence, the court below on the motion of the plaintiff's counsel, ruled out; and the question is, whether this ruling was correct.

The decision of the court is attempted to be sustained on the ground that there were but two facts to be ascertained by the jury, to wit: the removal and value of the property. These were, certainly, the main facts to be established by the plaintiff; but this is

not the question. Could the testimony of the plaintiff be rebutted or avoided, was the question raised by the evidence offered by the defendants. It may have been true that the property was removed, and that it was of a particular value. But could the defendants, after admitting these facts, still avoid or defeat a recovery by establishing some other fact, pertinent to the issue? The mere statement of the proposition would seem to be sufficient to suggest the decision which must follow. But let us examine the merits of the evidence. The defendants being executors, were not bound to plead specially, and could, therefore, introduce under the issue, the testimony, if relevant to the cause. The object of the testimony, was to show the amount of the debts paid by the administrator, and to this extent defeat a recovery. And here, it may be repeated, that, in the construction of this provision of the statute, we must not confine ourselves to the single provision, but take into consideration the whole law, or various laws, bearing upon the question.

It may be safely asserted, that the estate of an intestate must be applied to the payment of his debts; and that distributees can claim only the residue remaining after the demands of creditors have been satisfied. It may be further asserted, that it is immaterial at what stage of the administration a recovery may be had, at the instance of distributees, on the administration bond. Such recovery must inure to the benefit of creditors, so long as there are debts legally chargeable upon the estate; for, otherwise, it would be in the power of distributees, by recovering the penalty of the bond, to deprive creditors of that security to which they are entitled under the law. Having the superior right, creditors must, of necessity, have the superior protection, which the bond of an administrator affords. The whole system of law on the subject rests upon this principle. A testator may, by his will, exempt his executor from giving security, yet the court, looking to the superior claims of creditors, may, nevertheless, require security for their protection. Indeed, this subject is so familiar, that it is more difficult to find a person who does not understand it than those who do; and it may, therefore, be assumed, as absolutely true, that distributees occupy a secondary position in regard to the estate of an intestate; and take it either subject to his debts, or only what remains after their payment. This being the full extent of their

Bridges et al., Exrs., *v.* Maxwell, use, &c.

right, the injury or wrong complained of must be measured accordingly.

It is simply a mistake to suppose that the claims of creditors were in the least impaired by the removal of the property, or that the distributees acquired, in consequence of such removal, any additional right, except the right to an immediate action on the bond, to recover the value of the property, and such other damages as they had sustained, which would inure to the benefit of creditors. They were unquestionably entitled, under the showing, to the full value of the property, supposing that the action could be maintained at all. This right was not contested. The object of the evidence ruled out was not to defeat this right, but to discharge it. The defendants said, You may have the full value of the property, but we insist that you shall receive the debts which bound the property, in payment of such value. This was simply the question presented, and, to my mind, it does not admit of illustration.

I admit that the Probate Court could not confirm or sanction the sale of the property in Louisiana; but this erroneous, or void proceeding, could not deprive the court of jurisdiction in regard to other matters, such as allowing the administrators' accounts for debts legally chargeable upon the estate, and which they had paid.

The sale in Louisiana being void, and the executors accountable for property, the result was, that they were the creditors of the estate, to the amount of the debts which they had paid. The rights of the several creditors had centred in the executors, and they, of course, could insist upon anything on the trial below, which a creditor could insist on against distributees, to show the superior right of the former.

My opinion is, that the judgment ought to be reversed, the demurrer sustained to the declaration, and judgment final for the defendants below.